The next case today is United States v. Robinson Guzman, appeal number 21-1325. Attorney Milligan, please introduce yourself for the record and proceed with your argument. Good morning, your honors. May it please the court, my name is Leonard Milligan and I represent Robinson Guzman. With Justice Lynch's permission, I'd seek to retain two minutes for rebuttal. You may have it, thank you. Thank you. At its core, this case is about whether when a judge mentions three times the national origin of the defendant, suggesting that he's done independent extrajudicial research into the propensity or the statistical significance of defendants from that region of the Dominican Republic, and then sentences that first-time offender defendant to a sentence 25% above the average in the district for drug trafficking defendants. That would be for defendants of criminal history category one, like this defendant, all the way through six, and including career offenders. When the sentence for this first-time offender exceeds 25% over the average and is nearly double the median, is there enough to support the idea that national that it did, regardless of what approach this court takes to evaluate that error? I'll start with the approach I think the court should adopt, and it's the one I pointed to in my briefing from the Second Circuit. It's also prevalent in the Seventh Circuit, and it is the notion that it is incredibly challenging for a sentencing advocate to alert a court to its own bias while it awaits adjudication of a sentencing number. Recognizing that, courts in the CABA decision, and before that even in the Eduardo Franco decision in the Second Circuit, specifically say, we can't put defense counsel in this position. In this case, sentencing counsel specifically and that national origin is an inappropriate consideration. The judge assured him that he wouldn't. Then the judge... So, counsel, does it matter at all that the whole issue of national origin came up when the defense responded to the court's discussion about the stash house? I respectfully submit that it didn't, Your Honor. I didn't mean to cut you off. I thought is that in response to the stash house increase that he tried to explain that people keep leases for new immigrants from the Dominican Republic. So, he was the first one who uttered Dominican Republic. It's fair. He raised the issue of a habit among immigrants to this area in Massachusetts retaining leaseholds because of challenges that stem from immigration-related challenges to obtaining safe housing. And that includes... Five minutes remaining. Five minutes. The judge was not responding to that. He used it as an invitation to ask another question of counsel, which is, I note that he claims to have be from Santa Domingo, but where else is he from, essentially? And I recognize that it's sort of a pattern and I should be talking in the abstract here, but sentencing counsel was me. And I correctly assumed he was asking about Bonny because he responded by detailing the independent research he'd conducted about Bonny and how he'd been sentencing people from Bonny for more than 20 years. Mr. Milligan, a couple of questions. I take it your national origin argument is based on him being from Bonny rather than from the Dominican Republic, correct? It is my contention that his status as a Dominican immigrant inspired the court to refer to his prior experience with people from Bonny. Well, so Bonny is an essential part of your national origin discrimination. Okay. Second thing, we have for many decades now said that, particularly in cases from Puerto Rico, that judges may take account of local conditions when they consider the general deterrence effect. And given all the gun violence and the prevalence of machine guns in Puerto Rico, that there is no error in permitting judges to take consideration of that. So what's wrong with the judge taking it into consideration as he said he did solely for general deterrence, both generally and as to Bonny? Thank you, Your Honor. The core answer to your question is in the word local. The Puerto Rican cases that this court has repeatedly, and the government has referenced in its brief, has repeatedly re-endorsed is not about national origin. Puerto Ricans are Americans. Judges sentencing Puerto Ricans about their local conduct or sentencing them about their conduct. Mr. Milligan, I suspect defense counsel in Puerto Rico would strongly disagree with you. Go on, what's your next point? Well, I'm merely clarifying that the jurisdiction with which the general deterrence that is permissible in Puerto Rico is local. And local to what? Local to Puerto Rico? Local to San Juan? The specific acts they're seeking to deter are prevalent within the jurisdiction of the court that's basing their decision on that conduct. Here, the acts that took place in Lawrence and that region, the judge is saying, I want this local impact, this community to be deterred from it. But I'm also trying to create deference or create deterrence in a remote place because this... Which regularly sends people to these communities within my jurisdiction. And that is my personal experience, said judge. If I understand the idea, you think that counsel, that's significant because unlike in the Puerto Rico case, in which the national origin of the defendant is irrelevant, it's just presence in the jurisdiction. Here, the focus on Boni as a place that needs to be deterred is only relevant because of the national origin of the defendant, correct? It's extraterritorial general deterrence is unique from the local territory. But I take it the key point for you is the only reason that's a relevant community to deter is because of the national origin of the defendant. Whereas in the Puerto Rico case, the national origin of defendant is irrelevant to the deterrence aim. It's just presence in the jurisdiction. A person of any national origin could be present in the jurisdiction such that deterrence would be needed. But here, the district court's focused on needing to deter Boni solely because of the national origin of the defendant. That's the idea. Thank you for putting it better than me, Judge Barron. He frequently does. If I have time remaining, I... That's time. Okay. I don't. We'll hear you on your two-minute rebuttal later. Thank you, Attorney Milligan. Please mute your audio and video at this time. And Attorney Eisenstadt, please unmute your audio and video and begin by introducing yourself on the record. Good morning. May it please the court, Karen Eisenstadt for the government. This case comes down to whether the district court considered this defendant's national origin as a factor in determining his sentence of 54 months because that is what 5H1.10 of the sentencing guidelines forbids. And the record establishes here that the court did not do that. This defendant had a GSR of 70 to 87 months, and the court varied downward significantly to give him a sentence of his sentencing rationale. He said 70 months, which is the low end of the GSR and the government's recommendation, is very reasonable given the serious nature of your crime. I was considering giving you that. You argued that your undocumented status was mitigating. I don't find that persuasive. You know, there's a lot of undocumented immigrants in this country who don't turn to a persuasive your counsel's mitigation argument that you did especially hard time during detention because you did contract COVID-19 while in prison, and it was a fairly serious case, and thus I'm varying downward for that reason. That was the court's sentencing rationale. Now, over the course of the sentencing hearing, the court did make some references to the defendant's town of origin, which is Bonny in the Dominican Republic, but those remarks were not tethered to the court's sentencing rationale. Can I ask you about that? Because this is the passage that most seems to me necessary for you to explain. This is from the district court's sentencing transcript, and this is the district court speaking, and I have to give a sentence that should send a message to other people, including other people from Bonny, but not just them, that it's not just wrong, and these are the two sentences that give me the most concern. It's dumb to come to this country and sell drugs because you're going to get caught. You're going to get serious punishment, be separated from people you love, and then you're going to get deported. How can that not be a reason? That rationale would not apply to him. So, I think two points here. One, the passage that the panel had been asking defense counsel about, when defense counsel first raised this issue and raised a concern that the court seemed to be heading in the direction of considering national origin, the court's response was, I disagree with you in theory that I cannot consider this. I understand the context in which that initial passage arose, and there's a reference to it's, and it's possible that it's is a reference backed by the district court to the earlier type of thing he was talking about, and then he says, I'm not going to consider it. Don't worry about it. I'm now asking about this passage where he says, I have to give a sentence that should send a message. Part of the message he says he has to send in giving this sentence is that it's dumb to come to this country and sell drugs because you're going to get caught, you're going to get serious punishment, be separated from people you love, and then you're going to get deported. That rationale could not apply to a non-immigrant. I think we need to make a distinction here. So, the defendant's claim is that his national origin, specifically his origin in Bani, was the impermissible consideration. He's not making an argument that the impermissible consideration was alienage. He did make an argument to the district court in mitigation that because I'm an undocumented alien specifically, you should consider mitigating that I'm a first-time offender because the Trump administration's policies essentially pushed undocumented immigrants into crime to support their families because it was more difficult to support their families legitimately due to ICE raids, etc. So, in referring to that, the district court is specifically responding to the mitigation argument, which he has rejected because in his view, you can be an undocumented immigrant, come illegally to this country, but not choose to be a drug trafficker. And that was something the court referenced, I think, at length when saying, you know, I've considered your history. So, what do I do? You're making an argument, if I understand it, you're making an argument that this passage could be read, not to be suggesting that the sentence was going to be bumped up, but just that the sentence was not going to be lowered based on his claim of mitigation. That's what I take your point to be, correct? I think the court rejected the mitigation. So, when the court said, I considered your history and characteristics, there's people that come to this country. The court had already rejected that mitigation argument. Stick with me on the passage I'm asking about. You're asking me to read the passage I just read to you, to be understood best as an explanation by the district court of why it was rejecting his mitigation argument about undocumented status? No, no, I don't think that's correct. I think the court... Okay, how then am I to understand this part of the passage as not a statement that I'm giving you this sentence, in part, because I'm trying to send a message to people who come to this country from other countries? I think the court here explained his sentencing rationale, which was essentially the seriousness of this offense. The court then said, I did consider the other 3553 factors as I'm required to do by statute and have determined that those are also satisfied by this sentence that I... Can I ask you this one last time? Because it's just going to be helpful to me. And me too. I want to know what you are telling me about the passage I just read to you. I don't want to know about other things the district court said. I would like you to explain to me how the passage I just read to you, which the district court said, I have to give a sentence that sends a message to other people that it's dumb to come to this country and sell drugs. You're going to get serious punishment and be deported. I have trouble understanding how that's not a statement that I am factoring into the sentence that you're from another country. What is the government's response as to why that's a misreading of that passage? I don't understand that to be saying I'm factoring to the sentence that you're from another country. I mean, I don't think at any point during the sentencing hearing, there is a concern that the district court was focused on the defendant's alienage in any way other than the defendant asked him to focus on it in mitigation. So I just don't see that as an issue and not his claim on appeal either. I mean, he's really focused on the fact that you're focused on my national origin, which is a different characteristic than alienage. I don't think there's anything in what the district court said that suggests any bias towards him because he was an immigrant or an illegal immigrant or anything of that nature. So the alienage only came up in this because, in fact, he is from a different country and also in ways that he raised it, either in response to the stash house enhancement and asking for her to be considered mitigating that he's an undocumented immigrant and saying the court should take into account, which the court said he would think about that, you know, I'm going to get deported after this sentence. And so, you know, you can, as the person said, take that into account and that I'll be detained for an additional period of time after this sentence is served. So alienage really and deportation really only came into this in as much as the defendant raised it. And I don't think his claim on appeal has anything to do with the court having bias or having taken his alienage into into account with respect to determining the sentence. I think his claim is, as Judge Lynch pointed out, focused on Bonnie, specifically his place of origin and the fact that he's from the Dominican Republic, not that he's not a citizen of this the judge was drawing a distinction between those who engage in illegal drug trafficking and in particular run stash houses and the very many fine people who come here, not legally, but do not engage in those activities. I think that's exactly correct, which is why I to contextualize it with what the judge had said just a little bit regarding history and characteristics. That suggests that you're asking me to read the sentence as a rejection of his argument in mitigation. No, I don't think I think the court rejected his argument in mitigation because the court came to the conclusion that there are immigrants, including illegal immigrants in this country who don't sell drugs, but you did sell drugs. And so the fact that you're an mitigating to sell drugs. Okay, that's fine. That's not what this passage is doing. How is it relevant in sentencing that other immigrants don't do this, but you're an immigrant that does do this? Why should that make you get a worse sentence than a non-immigrant? I don't understand that. I don't think in any way that did. To be clear, what the defense argued was that I'm a first time offender. And of course that is factored into my criminal history category and then into my guideline sentencing range. However, he said, you should also vary downward because I'm a first time offender. So I should get an extra discount for that because I'm an illegal immigrant and under the Trump administration, because the immigration policies in this country changed, illegal immigrants were effectively pushed into crime. And so that is mitigating to me. And I didn't, based on when this offense was, when he was arrested and when this was prosecuted, it doesn't look like I did it right away when I came to this country, waited until I was pushed into it. The court's response to that was twofold. One is I don't buy the idea that being an illegal immigrant means that you have no choice but to say, I'm looking at other people who are also in the same bucket, illegal immigrants. And even among the ones that are drug offenders, you're not the lowest of those because as Judge Lynch pointed out, you have a stash house. So I think because of that, that is the court's framework in thinking about this. You're continually trying to raise to me your undocumented immigrant status as mitigating. But because there are many undocumented immigrants that don't make the your position then is that the way to understand this is this is part of a rejection of his mitigation argument. I think if it's not that, I don't understand what your point is. You could view it that way, but in doing so, he's not rejecting it because he's an undocumented immigrant, because the comparison is with other undocumented immigrants. It's not alien to suppose I thought it's just unclear since he doesn't refer to why he's making this point, the district court. Suppose I just think there's a lack of clarity about that. What should I do? I think there, the standard review could make a difference. And here, the government's contention is the claim is not preserved. You know, right after the court made that statement, defense counsel said nothing. And then the court said before closing the hearing anything further. And again, defense counsel said nothing. So the opportunity for clarification was there. Defense counsel didn't take it, although if we disagree on that and assume it's sufficiently preserved, what's your response? What should we do if there's if we feel there's a lack of clarity and it's sufficiently preserved? If it is sufficiently preserved, and that's where here under harmless error review, I do think under this court's precedence, the lack of clarity means the government cannot show that a potential error is harmless. So I do think that in that case, there could be a basis for remand. But I think here the record just is not unclear in that way. And in addition, I think it's obvious that the claim was not preserved because this counsel did not object when counsel perceived an error had occurred, which is what a contemporaneous objection should be. To take that position, we'd have to reject the view of the Second Circuit, right? I think that's probably correct. Yes. The Second Circuit, it's not totally clear how they're applying their standard because I don't think the standard is principled. So in the cases that he cited from the Second Circuit, it actually did seem to me that even under harmless error view, the record in those cases was such that the case could have been remanded that way and that the Second Circuit standard wasn't actually doing any work there. But I'm reading it as an opinion and that's what I perceive in it. But the Second Circuit, the way that the defendant is arguing here is essentially a watered down standard in which if there are remarks that the court feels are imprudent, then that is enough for vacating a sentence and remanding. So if that's the interpretation of the Second Circuit standard, then the remarks are what they are. Thank you. Thank you. Thank you, Attorney Eisenstadt. Please mute your audio and video. Attorney Milligan, please introduce yourself on the record again. You have a two minute rebuttal. Thank you again, Your Honors. My name is Leonard Milligan for Robinson Guzman, the appellant in this matter. It's hard to construct a way in which even in retrospect, counsel could have more clearly alerted the court to its objection after the court said, I'm not going to consider it. And subsequent references to it leaves counsel in the position of saying, Judge, you previously said you weren't going to consider it. I'm accusing you of what the it is. Judge Lynch was asking about whether your claim was about the actual place of origin rather than alienage, as the government wants to put it. And to me, the most concerning passage is the one that I've been focused on in this argument. Now, in that passage, he definitely refers to Bani again, though it's clearly not a statement that I'm trying to deter people just in Bani. He's trying to deter people generally who are from other countries. So, just give me your account of how the objection that was lodged encompasses this passage, if I thought this is the most problematic passage. The objection that was lodged said, it's inappropriate to consider national origin. The judge assured that natural origin would not be considered. And then the judge later, in his stating his basis for the sentence, confirmed the qualifier he made way back when he, in a sense, sustained the objection by saying, I agree, it won't be material to my decision, but I do think it's relevant to the issue of people. I don't have a brilliant answer for whether I'm talking about Bani or the Dominican, except to say that the judge's particular interest in that region doesn't change the fact that this was inspired by his, and his first question was, I see he claims to be from the Santo Domingo area of the Dominican Republic, but where else is he from? And again, in the moment, in the context, it was abundantly clear he was asking about the Bani reference. And there was a letter from the ex-wife of the defendant with her return address in the sentencing memorandums that explained that she's from Bani. So, counsel's response was, he has family in the Bani area. And the judge's next statements reveal that this was never about the mitigation argument, and it wasn't about any part of what. That's time. Okay. Thank you. Thank you. That concludes argument in this case. Attorney Milligan and Attorney Eisenstat should disconnect from the hearing at this time.